**ON REHEARING**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 15-4460**

———————

UNITED STATES OF AMERICA,

              Plaintiff – Appellee,

     v.

ANTHONY TORELL TATUM, a/k/a Anthony Tatum, a/k/a Brandon
Ross, a/k/a Short Dog,

              Defendant - Appellant.

———————

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.  Deborah K. Chasanow, Senior District
Judge.  (8:13-cr-00492-DKC-1)

———————

Submitted:  September 29, 2016     Decided:  October 12, 2016

———————

Before DUNCAN and FLOYD, Circuit Judges, and DAVIS, Senior
Circuit Judge.

———————

Affirmed by unpublished per curiam opinion.

———————

Richard A. Finci, Jennifer L. Mayer, HOULON, BERMAN, FINCI,
LEVENSTEIN & SKOK, LLC, Greenbelt, Maryland, for Appellant.
Rod J. Rosenstein, United States Attorney, Thomas P. Windom,
Deborah A. Johnston, Assistant United States Attorneys,
Greenbelt, Maryland, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Anthony Torell Tatum appeals his 324-month sentence entered pursuant to his guilty plea to drug and money laundering conspiracies and a firearm charge. On appeal, Tatum contended that the district court erred in calculating the drug quantity attributable to him as at least 150 kilograms of cocaine. We affirmed Tatum's sentence. Tatum has filed a petition for panel and en banc rehearing, and after consideration of his arguments on rehearing, we conclude that our prior opinion misstated a mathematical calculation. Accordingly, we grant Appellant's petition for panel rehearing,[1] and having determined that the misstatement in the original opinion had no bearing on our resolution of the ultimate issue, we affirm.

Under the Sentencing Guidelines in effect at the time of Tatum's sentencing, a defendant convicted of conspiring to distribute controlled substances is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were in furtherance of the joint criminal conduct. U.S. Sentencing Guidelines Manual § 1B1.3 cmt. n.2 (2014). The Government must

---

[1] We denied the petition for rehearing en banc by separate order.

2

prove the drug quantity attributable to the defendant by a preponderance of the evidence. United States v. Carter, 300 F.3d 415, 425 (4th Cir. 2002). The district court may rely on information in the presentence report unless the defendant affirmatively shows that the information is inaccurate or unreliable. Id. A district court's findings on drug quantity are generally factual in nature, and therefore we review for clear error. Id. In addition, we may affirm a Guidelines determination for any reason appearing in the record. United States v. Garnett, 243 F.3d 824, 830 (4th Cir. 2001) (holding that appellate courts may "affirm [the] sentence on the basis of 'any conduct [in the record] that independently and properly should result in an increase in the offense level'") (citation omitted).

Tatum avers that his drug quantity should be limited to the amount to which he pled guilty. He raises numerous arguments attacking the reliability and relevance of the Government's evidence at sentencing. In the district court, Tatum provided no evidence or argument as to the actual scope of his participation in the drug conspiracy to which he pled guilty; instead, he rested on the Government's alleged lack of proof and the district court's alleged failure to properly consider the evidence.

We conclude that the evidence clearly shows that Tatum was responsible for at least 150 kilograms of cocaine. Further, the evidence is so overwhelming that most of Tatum's arguments fail to cut to the heart of the matter and just operate to obfuscate the issue. Specifically, Tatum admitted in the statement of facts attached to his plea agreement that over $90,000 of cash deposits in the bank accounts of his businesses were "virtually all" drug proceeds.[2] In addition, Tatum admitted that, "[i]n addition," he used drug proceeds of $17,000 (plus the cost of a 2013 Volvo) to purchase cars.[3] He also admitted to buying "expensive jewelry," including men's watches, with drug proceeds.

The evidence presented by the Government at sentencing showed that, from just one store, Tatum's watch purchases totaled $260,000. Other seized jewelry and designer clothes were appraised at over $360,000. In addition, the case agent averred that Tatum's cash deposits from 2009 until 2011 were

---

[2] In his petition for rehearing, Tatum contends that "money order" deposits and "payment" deposits are not part of his admission that "virtually all" of the "cash deposits" were drug proceeds. We need not rule on this issue and, instead, have omitted any funds in Tatum's admission that were not clearly stated to be "cash deposits."

[3] Tatum also admitted to purchasing a $60,000 Land Rover in 2011, although the statement of facts does not specifically identify those funds as drug proceeds.

4

$650,000, the "vast majority" of which was drug proceeds.[4] Thus, even recognizing some double counting and excluding the amounts contested in Tatum's rehearing petition, Tatum's admissions, combined with record evidence, easily show that Tatum's purchases with and deposits of drug proceeds were at least $750,000.

Tatum contends that his businesses were legitimate and ongoing, even though "at least a part" of the cash deposits were drug proceeds. Thus, he claims that many of his purchases and deposits were made with legitimate funds. In support, Tatum states that one of his businesses reported $200,000 in income on its 2012 tax returns and that an investigator submitted evidence that the same business was a legitimate business. However, this evidence only concerns one of Tatum's businesses and does not call into question the nature of his other businesses. Moreover, there is no evidence in the record that the $200,000 income reported was actually traceable to legitimate income, and the investigator could not locate records sufficient to provide an estimate as to the company's income. In addition, the case agent averred that $650,000 in cash deposits across 22 of Tatum's bank accounts were not related to the operation of

---

[4] While these dates precede the dates in the indictment, we find no error in including these drug proceeds as relevant conduct.

legitimate businesses and that the "vast majority" of the "business" expenses were personal expenditures. Thus, even if some portion of the funds in Tatum's bank accounts were legitimate, his admissions and the other evidence of record show clearly at least $750,000 of drug proceeds attributable to Tatum.

According to the affidavit of the case agent, distribution of a kilogram of cocaine nets between $1000 and $5000.[5] Thus, even using the most conservative calculations, the drug proceeds described above and supported by Tatum's admissions, as well as the record evidence, easily represent more than 150 kilograms of cocaine. Notably, this extremely conservative calculation does not even consider the wealth of other evidence of drug quantity, including the cocaine seized during the investigation, any other "reasonably foreseeable" actions by any members of the conspiracy that did not directly profit Tatum, and the fact that the evidence could support a finding that $750,000 converted to 750 kilograms of cocaine ($1000 from each kilogram). As such,

---

[5] Tatum also contends that the Government failed to have an expert testify as to the proper conversion of cash into cocaine amounts. To the contrary, however, the Government presented the affidavit of the case agent, which provided a range of conversion rates, the most conservative of which still shows that Tatum was responsible for over 150 kilograms of cocaine. Tatum does not challenge the agent's testimony of pricing and profits or provide any evidence of his own estimates.

we find that the district court's conclusions regarding drug quantity were not clear error and were well-supported by the record.

Tatum's other arguments are nearly wholly irrelevant given these findings. Tatum contends that the district court failed to make particularized findings regarding the scope of his conspiracy and the quantity of cocaine involved. The court also allegedly failed to make a finding regarding how much of the coconspirators' conduct was reasonably foreseeable to Tatum. Tatum also challenges the case agent's statements regarding information from informants. Tatum alleges that the statements are insufficiently corroborated and that he was not able to challenge the evidence given that the informants were not identified. Tatum also asserts that certain cocaine amounts and cash (not his bank accounts) were never tied to him and that the district court's conclusions were entirely speculative. As discussed above, however, even removing much of this evidence, the 150-kilogram threshold is easily obtained. As such, any district court error in these regards would not render the drug amount clearly erroneous, given the overwhelming evidence against Tatum. Accordingly, we will not address each issue separately.

Tatum also has filed several pro se supplemental briefs. We deny his motions to file these briefs. See United States v.

7

*Penniegraft*, 641 F.3d 566, 569 n.1 (4th Cir. 2011) (denying motion to file pro se supplemental brief where appellant had counsel and appeal not filed pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967)); <u>see also</u> <u>Myers v. Johnson</u>, 76 F.3d 1330, 1335 (5th Cir. 1996) ("By accepting the assistance of counsel the criminal appellant waives his right to present pro se briefs on direct appeal."). We affirm Tatum's sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

<u>AFFIRMED</u>